UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRIK GAUTHIER AND** | * | **CIVIL ACTION NO. 3:22-CV-550** |
| **CRYSTAL GAUTHIER** | * | |
| | * | **JUDGE BRIAN A. JACKSON** |
| **VERSUS** | * | |
| | * | |
| **STATE FARM FIRE AND** | * | **MAGISTRATE JUDGE** |
| **CASUALTY COMPANY** | * | **RICHARD L. BOURGEOIS JR.** |

*****************************************************************************

## RULE 26(f) JOINT STATUS REPORT

Pursuant to the Court's Order, dated August 25, 2022, [R. Doc. 5], the parties jointly submitted the following status report. The conference was held via telephone on October 3 and 4, 2022 between Mary K. Taliancich, counsel for Plaintiffs, Brik Gauthier and Crystal Gauthier ("Plaintiffs"), and Dan Richard Dorsey, counsel for Defendant State Farm Fire and Casualty Company ("State Farm").

### A. JURISDICTION

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1332 and 1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

### B. BRIEF EXPLANATION OF THE CASE

1. **Plaintiffs' Claims:**

At all times relevant hereto, Plaintiff owed the property located at 22224 Helen Drive, Denham Springs, Louisiana 70726 (the "Property"). At all times relevant hereto, State Farm provided a policy of insurance, number 18BBN5976 (the "Policy"), to Plaintiffs which covered the Property against perils including hurricanes, wind, and hailstorms.

The Policy effective from May 5, 2019, to May 5, 2020, provided the following coverages: $366,500 for dwelling, $36,650 for dwelling extension, $274,875 for personal property, and actual loss sustained for Additional Living Expenses, *inter alia*.

The Policy effective from May 5, 2021, to May 5, 2022, provided the following coverages: $414,200 for dwelling, $41,420 for other structures, $310,650 for personal property, and $124,260 for Additional Living Expenses, *inter alia*.

On or around August 21, 2020, a wind and hailstorm caused significant damages to Plaintiffs' Property. Plaintiffs timely reported the loss to State Farm, who assigned it claim number 1816G925F (the "August Claim"). For reasons unknown, State Farm assigned the date of loss as April 22, 2020. As soon as practicable, Plaintiffs took steps to mitigate the damages to their home at their expense to the best of their ability under the circumstances.

On or about March 3, 2021, an adjuster inspected the Property on behalf of State Farm and documented $435.46 in damages to the Property, but after over depreciating the loss and applying the Policy's $1,832.00 other losses deductible, the adjuster denied the claim as below deductible and allowed $0.00 to Plaintiffs for their substantial and covered losses as it relates to their August claim. State Farm's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

On or about May 4, 2021, Destination Claims, inspected the Property on behalf of Plaintiffs and created an estimate of damages documenting $50,673.85 RCV in damages to the dwelling. On or about May 4, 2021, a demand for the release of unconditional tenders was sent to State Farm, along with the Destination Claims estimate and supporting photographs demonstrating the August Wind/Hailstorm damages. This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

Thereafter, on or around August 29, 2021, Hurricane Ida struck and caused new and worsening damages to the Property. Plaintiffs timely reported their loss to State Farm who assigned it claim number 1825D540D (the "Ida claim).

On or about November 15, 2021, State Farm dispatched adjuster, Peter Hill, on its behalf to inspect the Property and document his findings. Mr. Hill documented $27,802.19 RCV ($20,701.94 ACV) in damages to the Property, but after over depreciating the loss and applying the Policy's $20,710 hurricane deductible, the adjuster denied the claim as below deductible and allowed $0.00 to Plaintiffs for their substantial and covered losses as it relates to their August claim. State Farm's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

To date, State Farm has refused to tender any payment under both the August claim and Ida claim. There is a significant difference in scope and valuation of the parties' estimates of damages.

It is Plaintiffs' position that Defendant arbitrarily did not timely and adequately pay on both the August claim and Ida claim.

Accordingly, Plaintiffs seek remedy for the following damages:

i. Diminution of the value of the Property;
ii. Actual repair costs;
iii. Reimbursement for personal repairs at the Property;
iv. Actual costs related to personal property manipulation, cleaning, repairs, and/or replacement;
v. Additional living expenses;
vi. Mental anguish;
vii. Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and
viii. Attorneys' fees, other professional fees, and litigation costs associated with the bringing of this action.

**2. Defendant's Claims:**

Plaintiffs allege their home was damaged by an unnamed wind/hailstorm on August 22, 2020. On February 9, 2021, plaintiffs' contractor reported a claim for wind and hail damage to

plaintiffs' home with a date of loss of April 22, 2020.  After several attempts to reach the plaintiffs, State Farm spoke to plaintiff Crystal Gauthier on February 25, 2021; no August 2020 date of loss was reported and no interior water damage was reported by plaintiff during initial contact.  State Farm inspected the home on March 3, 2021. No interior water damage was reported by plaintiff at inspection.  Some of the damage observed was covered by the policy, however the loss did not exceed the deductible. Inspection also revealed wear and improper installation of the dwelling shingles; these types of losses are excluded from coverage.  Plaintiffs were informed of same.  Plaintiffs contracted with a public adjusting firm, Destination Claims, which submitted an estimate that also included claimed interior damages, and disputed State Farm's estimate. State Farm conducted a second inspection on June 22, 2021 that included both exterior and interior. Observations included areas of rot to the roof decking, an item not covered by the policy. Plaintiffs were informed. State Farm hired Madsen, Kneppers & Associates, Inc., Construction Consultants & Engineers, to inspect the dwelling, pool house and 2 metal outbuildings roofs and elevation to determine cause of loss as to the roofs/elevations and evaluate repairability. The Madsen representative inspected on July 14, 2021 and rendered an expert report. State Farm's estimate was revised based on the additional inspections; however, the loss was still under the deductible. Plaintiffs were informed.  A letter of representation was received from counsel on September 10, 2021.

Plaintiffs also made a claim for Hurricane Ida damages.  Loss report was received and State Farm's initial contact with plaintiffs was on September 23, 2021. Letter of representation was provided by plaintiffs' counsel on September 28, 2021. State Farm scheduled an inspection for October 20, 2021 but plaintiffs did not appear.  State Farm was then notified on October 20, 2021 that a public adjuster firm, ATA Consulting, was hired to assist plaintiffs and ATA should be

contacted to schedule inspection, not plaintiffs. State Farm made several requests for dates/times and eventually ATA Consulting scheduled the inspection for November 15, 2021. State Farm prepared an estimate; damages were below the hurricane deductible but replacement cost benefits were available. On January 21, 2022, plaintiffs' attorney's correspondence provided a dwelling damage estimate by public adjuster ATA Consulting seeking immediate payment. State Farm rejected the plaintiffs' demand as the ATA Consulting estimate amount far exceeded State Farm's estimate based on scope and pricing, and State Farm's previous inspections and photos do not support several of the items claimed as damaged by Hurricane Ida. State Farm disputes whether the damages claimed to be related to Hurricane Ida are pre-existing and the result of a prior wind event unrelated to Hurricane Ida. Plaintiffs have filed suit for bad faith claims handling. State Farm has answered the complaint and denied the allegations therein.

## C. PENDING MOTIONS

There are currently no pending motions for decision in this matter.

## D. ISSUES

**1) Plaintiffs**: Plaintiffs aver the following are major issues of fact and law that remain in dispute: (1) the reasonableness of State Farm's initial investigation into the loss and cause thereof; (2) whether State Farm has paid all that is currently owed under the Policy to date based on information provided by Plaintiffs to State and information uncovered through State Farm's own investigation; (3) whether State Farm violated any statutes concerning timing or calculation of its payments; (4) if State Farm is found to have violated any statutes, the amounts available to Plaintiffs under those statutes; (5) whether State Farm timely initiated the loss adjustments; and (6) whether State Farm's mishandling of Plaintiffs' claims constitutes bad faith in accordance with Louisiana bad faith statutes.

**2) Defendant**: Defendant State Farm avers that the following issues are involved and are in dispute:

(1) Whether some of the wind/hail damage claimed by Plaintiffs is a covered loss under their State Farm homeowner's policy?

(2) Whether State Farm failed to adjust and pay Plaintiffs' insurance claim for the alleged wind/hail damage?

(3) Whether Plaintiffs are entitled to recover from State Farm penalties and attorney's fees pursuant to La. R.S. 22:1892 and La. R.S. 22:1973 for alleged bad faith claim handling for the wind/hail claim?

(4) The amount of damages owed to Plaintiffs for the wind/hail claim, if any;

(5) Whether some of the Hurricane Ida damage claimed by Plaintiffs is a covered loss under their State Farm homeowner's policy?

(6) Whether State Farm failed to adjust and pay Plaintiffs' insurance claim for the alleged Hurricane Ida damage?

(7) Whether Plaintiffs are entitled to recover from State Farm penalties and attorney's fees pursuant to La. R.S. 22:1892 and La. R.S. 22:1973 for alleged bad faith claim handling of the Hurricane Ida claim?

(8) The amount of damages owed to Plaintiffs for the Hurricane Ida claim, if any;

(9) Any issue of fact implicit in the pleadings and/or discovery.

State Farm disagrees with plaintiffs and their expert regarding the extent of damage to the dwelling, contents, and additional living expenses. State Farm denies that it acted in

bad faith in handling plaintiffs' claims and avers that it acted in a reasonable and timely manner at all pertinent times here.

### E. DAMAGES

Separately, for each party who claims damages or an offset, set forth the computation of damages of the offset:

1. Plaintiffs' calculation of damages is as follows:

    a. Plaintiffs' calculation of damages for both the Ida claim & August Claim:

| | |
|---|---|
| Dwelling: | $150,873.92 |
| Prior payments: | ($0.00) |
| Deductible: | ($20,710.00) |
| Statutory penalties under La. R.S. § 22:1892: | $221,165.93 |
| Attorney's fees under La. R.S. § 22:1892: | $265,399.11 |
| General Damages: | $65,000.00 |
| Costs: | $9,186.04[1] |
| **Total:** | **$690,915.00** |

2. Defendant's calculation of offset and/or plaintiff's damages:

    None known at this time.

### F. SERVICE

None.

---

[1] This computation includes court costs and cost of retaining ATA Loss Consulting. This amount is subject to increase as additional expenses are incurred and/or as invoices are received.

G. **DISCOVERY**

1. Initial Disclosures:

    A. Have the initial disclosures required under FRCP 26(a)(1) been completed?

    [ ] YES    [X] NO

    In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP26(f) conference and states the objection below.

    B. Do any parties object to initial disclosures?

    [ ] YES    [X] NO

    For any party who answered *yes*, please explain your reasons for objecting.

2. Briefly describe any discovery that has been completed or is in progress:

    **By Plaintiffs:** Plaintiffs have propounded discovery on Defendant and requested deposition dates.

    **By Defendant:** No discovery has been propounded but Defendant is in the process of preparing discovery and scheduling depositions.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

    **Plaintiffs:** At this time, Plaintiffs do not anticipate the need for any protective orders.

**Defendant:** State Farm reserves the right to seek a protective order should plaintiff make a demand of confidential business records or information/documents otherwise protected from discovery.

4. Discovery from Experts:

   Identify the subject matter(s) as to which expert testimony will be offered:

   **By Plaintiffs:** Testimony may be offered as to the extent of loss in relation to the windstorm and hail event.

   **By Defendant**: State Farm's experts will testify regarding the existence, nature and scope of plaintiffs' damages and the relationship of those damages, if any, to the claims at issue.

## H. PROPOSED SCHEDULING ORDER

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: <u>N/A.</u> The parties will exchange disclosures on or before October 13, 2022, in accordance with the Court's prior Order. [R. Doc. 5]

    2. Recommended deadlines to join other parties or to amend the pleadings: July 1, 2023.[2]

    3. Filing all discovery motions and completing all discovery except experts: August 30, 2023.

---

[2] Any proposed amended pleading shall be comprehensive and include all relevant allegations as revised, supplemented or amended such that it will become the operative pleading without reference to any other document in the record. Any amendment sought under Fed. R. Civ. P. 15(a) (2) requires leave of court whether or not the opposing party consents even if filed before this deadline, however the movant shall advise whether the opposing party consents. See LR 7(e).

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

Plaintiff(s): June 16, 2023.

Defendant(s): July 16, 2023.

5. Exchange of expert reports:

Plaintiff(s): June 16, 2023.

Defendant(s): July 16, 2023.

6. Completion of discovery from experts: August 30, 2023.

7. Filing dispositive motions and Daubert motions: September 30, 2023.

8. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.[3] The parties should not provide any proposed dates for these remaining deadlines.

a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

b. Deadline to file motions in *limine* (approximately 20-22 weeks after dispositive motion deadline).

c. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

---

[3] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All request for subsequent changes to the deadlines set in the scheduling order under paragraph number 7 or 8 must be by motion directed to the presiding judge.

    d.      Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

    e.      Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

    f.      Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

## I. TRIAL

1. A demand for trial by jury has been made.
2. Trial is estimated to last three (3) days.

## J. OTHER MATTERS

Are there any specific problems the parties wish to address at the scheduling conference?

[ ] Yes   [X] No

    i.    If the answer is yes, please explain: N/A.

    ii.   If the answer is no, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DATES.**

[ X ] Yes   [ ] No

**K. SETTLEMENT**

    10.    Please set forth what efforts, if any, the parties have made to settle this case todate.

The parties have not engaged in settlement negotiations. However, Plaintiffs remain eager and open to settlement discussions. Defendant is open to meaningful settlement discussions.

    11.    Do the parties wish to have a settlement conference:

[X] YES   [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be mostbeneficial? Counsel for Plaintiff would welcome the opportunity to engage in settlement discussions with the Court as soon as possible. Counsel for Defendant believes that a settlement conference would be most beneficial after deadlines for discovery and dispositive motions and prior to the pretrial conference.

**L. CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge. Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and presideover a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] YES   [X] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresentedparties should sign the <u>attached form</u> to indicate your consent.**

Report dated: <u>October 6, 2022</u>

                                                     **RESPECTFULLY SUBMITTED:**

<u>/s/  Mary K. Taliancich</u>
Galen M. Hair, La. Bar. No. 32865
Mary K. Taliancich, La. Bar No. 39357
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC**
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM LAWYERS, INC.**
3540 S. I-10 Service Rd., W, Ste. 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
mary@insuranceclaimhq.com
*Attorneys for Plaintiffs*

And

<u>/s/ Dan Richard Dorsey</u>
DAN RICHARD DORSEY (#18188)
PATRICIA P. BARATTINI (#2731)
Porteous, Hainkel, & Johnson, L.L.P.
408 N. Columbia Street.
Covington, LA 70433
Telephone: (985)246-7446
ddorsey@phjlaw.com
pbarattini@phjlaw.com
*Attorneys for Defendant*

4878-0075-0390, v. 1